OPINION
{¶ 1} Defendant-appellant, Sonia Laseur, appeals his conviction in the Warren County Court of Common Pleas for attempted rape and three counts of gross sexual imposition. We affirm the decision of the trial court.
 {¶ 2} Appellant was charged with two counts of rape, one count of attempted rape, and three counts of gross sexual imposition, all involving children under the age of 13. The charges were the result of allegations by two girls who said that appellant sexually abused them while he and his wife were baby-sitting them.
 {¶ 3} A jury found appellant guilty of the attempted rape charge and the three counts of gross sexual imposition. Appellant now appeals his conviction on these charges and raises two assignments of error.
Assignment of Error No. 1
 {¶ 4} "THE VERDICT OF THE JURY WAS BASED UPON INSUFFICIENT EVIDENCE."
Assignment of Error No. 2
 {¶ 5} "THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 6} In his first assignment of error, appellant contends that there was insufficient evidence to convict him of the charges. He argues that his confession was based on testimony alone and, because of the girls' ages and the vagueness of their testimony, the evidence was insufficient.
 {¶ 7} When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, viewed in a light most favorable to the prosecution, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v.Goodwin, 84 Ohio St.3d 331, 343-44, 1999-Ohio-331; State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The verdict will not be disturbed unless it is determined that reasonable minds could not have reached the conclusion reached by the trier of fact. Jenks at 273.
 {¶ 8} In this case, CB, one of the victims, testified that appellant and his wife baby-sat her and her two younger sisters, along with CR and her younger sister. According to CB, when appellant's wife went on errands, appellant would take CB and CR inside the house and lock the door, leaving their younger sisters on the porch to play. CB testified that appellant first did things such as take his clothes off and encourage the two girls to do the same. She stated that at first the girls didn't want to take their clothes off, but eventually did. CB testified that she saw appellant's private parts, including his penis, and described a scar on appellant's upper thigh.
 {¶ 9} CB testified that appellant asked her and CR to lick his penis and she did so. She also stated that appellant put his mouth on her vagina. CB also described a game of "spin the lighter" that occurred when appellant took her and CR to a dog show. According to CB, when the lighter landed on a person, they had to touch the other persons "private spot." She also described swimming with appellant and said that he would try to get her to touch his penis while they were in the water.
 {¶ 10} CB also testified that on at least two occasions appellant put his penis between her legs and tried to push it in, but she tightened up her muscles. She stated that although appellant was able to place his penis between her legs, he was unable to get it inside. According to CB, appellant told her that he would pay her $500 if he was the first one to put his penis in her.
 {¶ 11} CR testified that appellant and his wife baby-sat her, and when appellant's wife left the home appellant locked the doors and "did nasty things" to her and CB. She described appellant pulling his pants down, touching her vagina, and touching his penis to her leg. CR testified that appellant made her and CB touch his penis with their hands. CR also described a game of "spin the lighter" and being forced to touch appellant's penis when she and CB went to a dog show with appellant. CR also stated that when she went swimming with appellant, he made her do more of the same types of things.
 {¶ 12} The victims' allegations were supported by the testimony of another girl who testified that she went to appellant's house once with CR and appellant said he had to talk to them inside, put them in a room and locked the door. The girl stated that appellant then pulled down his pants and kept telling her and CR to touch his penis. The girl stated that when appellant grabbed CR, she unlocked the door and ran outside.
 {¶ 13} Appellant disputes the girls' testimony that anything sexual ever occurred between him and them. He contends that the girls are lying because he caught them going through a dresser and later accused them of stealing his possessions.
 {¶ 14} Appellant argues that the victims' testimony alone was insufficient to find him guilty of attempted rape and gross sexual imposition. We disagree. Courts have consistently held that testimony of the victim, if believed, is sufficient to prove the elements of sexual offenses. State v. Lewis (1990), 70 Ohio App.3d 624. There is no requirement that the testimony of a victim of a sexual offense be corroborated as a condition precedent to conviction. Id.; State v. Banks
(1991), 71 Ohio App.3d 214, 220.
 {¶ 15} The above testimony, if believed by the jury, was more than sufficient to find the necessary elements of attempted rape and gross sexual imposition. Moreover, the credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact, who observed the witnesses in person. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Accordingly, appellant's first assignment of error is overruled.
 {¶ 16} In his second assignment of error, appellant challenges the manifest weight of the evidence to support his conviction. Appellant again argues that the only evidence was the girls' vague, uncorroborated testimony and the lack of physical evidence to support their allegations.
 {¶ 17} The concept of manifest weight of the evidence is different from an examination of the sufficiency of the evidence. Jenks,
61 Ohio St.3d at paragraph two of the syllabus. In order for an appellate court to reverse a judgment of conviction as against the manifest weight of the evidence, it must disagree with the fact-finder's resolution of conflicting testimony. State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. Therefore, an appellate court, when examining the evidence offered at trial, sits as a "thirteenth juror." Id.
 {¶ 18} However, this does not allow a reviewing court to lightly substitute its judgment for that of the jury. Id. This court may only reverse if after reviewing the entire record, weighing the evidence and all reasonable inferences, considering the credibility of witnesses and determines whether in resolving conflicts in the evidence, we find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 19} After reviewing the evidence in this case, we find that the evidence does not "weigh heavily against the conviction," and that appellant's attempted rape and gross sexual imposition convictions were not against the manifest weight of the evidence. Based on the victims' testimony, the jury could have reasonably found that appellant was guilty of the offenses. Appellant's second assignment of error is overruled.
Judgment affirmed.
VALEN, P.J., and POWELL, J., concur.